**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| STEVEN W. BLOOM, ) | Case No. 17-11650-TBM |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

**AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**DATED ~~NOVEMBER~~FEBRUARY 1~~9~~1, 201~~8~~9**

    STEVEN W. BLOOM, Debtor-in-Possession, hereby proposes his Amended Chapter 11 Plan of Reorganization pursuant 11 U.S.C. §1121 as follows:

**ARTICLE I**
**SUMMARY**

    This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay the creditors of Steven W. Bloom (the "Debtor") from future income.

    The Debtors filed his Voluntary Petition pursuant to Chapter 13 of the Bankruptcy Code on March 3, 2017. The Chapter 13 Petition was voluntarily converted to a Petition under Chapter 11 of the Code on June 28, 2017. The Debtor is an individual who resides at 6290 Ellingwood Point Way, Castle Rock, Colorado. The Debtor is an aircraft sales broker and is the 100% owner of Bloom Business Jets, LLC, which presently has little value beyond the Debtor's ability to generate sales from his long history in the business.

    This case was filed in order to provide a means through which the Debtor's debts could be restructured and creditors paid to the extent practical through the income generated from the income of the Debtor.

    This Plan provides for the reorganization of the Debtor under chapter 11 of the Bankruptcy Code. Pursuant to this Plan, the Debtor shall restructure his debts and obligations. A more complete history of the Debtor, his assets, an explanation of this Plan, and a description of the Debtor's financial condition and future earning activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

    This Plan provides for 5 class of secured claims; 3 class of priority claims; and, 3 classes of unsecured claims. Unsecured creditors holding allowed claims will receive distributions, which the

proponent of this Plan has valued at approximately 62.77 cents (62.77%) on the dollar. This estimate does not account for payment of disputed claims. This Plan also provides for payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

Class 1. The Allowed Secured Claim of Capitol One, or its successors and assigns secured by a lien on the property commonly known as 6290 Ellingwood Point Way, Castle Rock, Colorado.

Class 2. The Allowed Secured Claim of Bellco Credit Union, or its successors or assigns secured by a lien a 2016 Land Rover LR4.

Class 3. The Allowed Secured Claim of Bellco Credit Union, or its successors or assigns secured by a lien on a 2016 Jeep Wrangler.

Class 4. The Allowed Secured Claim of the Douglas County Treasurer for 2016 real estate taxes due in 2017.

Class 5. The Allowed Secured Claim of the Douglas County Treasurer for 2017 real estate taxes due in 2018.

Class 6. The Allowed Unsecured Priority Claim of Ms. Maureen Pasquale-Bloom for pre-petition child support arrears.

Class 7. The Allowed Unsecured Priority Claim of the IRS.

Class 8. The Allowed Unsecured Priority Claim of the Colorado Department of Revenue.

Class 9. The Allowed Claim, if any, held by the unsecured creditor Glencove

        Holdings LLC.

Class 10.    The Allowed Claims held by the general unsecured creditors other than Glencove Holdings LLC.

Class 11.    All unsecured claims that are subordinated to all other unsecured claims, including any claims for penalties not related to actual pecuniary loss and any civil penalties of any governmental authority, together with any pre-petition interest accrued on such claims.

Class 12.    The Equity Interests of the Debtor in his all of his property.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## U.S. TRUSTEE FEES

3.01.    Unclassified Claims. Under §1123(a)(1) of the Code, administrative expense claims, and US Trustee fees are not required to be classified in separate classes.

3.02.    Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full of the effective date of the Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed up by the holder of such claim and the Debtor.

3.03.    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee owed on or before the effective date of the Plan will be paid on the effective date.

3.04    Post Petition Taxes. The Debtor has paid and will continue to pay post-petition taxes as they become due, throughout the life of the Plan. Debtor shall pay any unpaid post-petition taxes in full on the Effective Date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01.    **Class 1. Capital One, N.A.** The Class 1 Claim consists of the Allowed Secured Claim held by Capital One, N.A., Bank in the amount of $571,595.59 as of the Petition Date, plus accruing interest, costs and attorneys' fees, and minus applied adequate protection payments. Such claim is secured by a deed of trust on real property owned by the Debtor known as 6290 Ellingwood Point Way, Castle Rock, Colorado 80108 (the "Homestead"). The Class 1 Creditor properly

perfected its lien on the Homestead pre-petition. **Class 1 is unimpaired under the Plan.** The Class 1 Claim will be treated under the Plan as follows:

    4.0.1    The total amount of the Class 1 claim will be allowed in the amount due on the Effective Date of the Plan and paid in accordance with the applicable loan documents, copies of which were attached to the proof of claim filed by the Class 1 Claimant. The amount of monthly payments is $3,355.20, not including any escrow for insurance and real estate taxes. The maturity date on such loan is July 1, 2040. Non-default interest shall continue to accrue at a fixed rate of 4.375% per annum.

    4.0.2    The lien position held by the Class 1 claimant shall be unaltered by the Plan, and shall remain in effect until the Class 1 creditor's Allowed Secured Claim is satisfied or the Homestead is sold in accordance with the applicable loan documents.

    4.0.3    As of the Effective Date of the Plan, the Class 1 claim shall bear interest in accordance with the applicable loan documents, copies of which were attached to the proof of claim filed by the Class 1 Claimant.

    4.0.4    Mr. Bloom may pre-pay the Class 1 Claim, including all principal, interest, and fees without penalty at any time.

    4.02    **Class 2. Bellco Credit Union (Land Rover Loan)**. Class 2 shall consist of the Allowed Secured Claim of Bellco Credit Union in the amount of $36,245.00 as of the Petition Date. Pre-petition the Debtor purchased a 2016 Land Rover LR4 with the funds from Bellco Credit Union. Bellco Credit Union properly perfected its lien pre-petition. As of the Petition Date, the Debtor asserts that the value of the Land Rover exceeds the indebtedness. **Class 2 is unimpaired** under the Plan. The Class 2 Claim will be treated under the Plan as follows:

    4.2.1    The Class 2 Secured Claim will be Allowed in its full amount pursuant to the terms and conditions of the underlying loan documents which support, evidence, and underlie the Allowed Secured Claim. All post-petition payments made by the Debtor shall be applied to reduce the Class 2 Claim. The Class 2 Secured Claim shall be satisfied be receiving monthly payments in accordance with the underlying loan documents.

    4.03    **Class 3. Bellco Credit Union (Jeep Loan).** Class 3 shall consist of the Allowed Secured Claim of Bellco Credit Union in the amount of $28,810.00 as of the Petition Date. Pre-petition the Debtor purchased a 2016 Jeep Wrangler with the funds from Bellco Credit Union. Bellco Credit Union properly perfected its lien pre-petition. The Debtor asserts that the current market value of the Jeep Wrangler is approximately $24,225 according to NADA. **Class 3 is impaired.** Class 3 Claim is impaired under the Plan and shall be treated as follows:

    4.3.1  Bellco Credit Union shall have an Allowed Secured Claim in the amount of $24,225.00. Such claim shall bear interest at the rate of four percent (4.00%) per annum. All post-petition payments made by the Debtor shall be applied to reduce the principal balance of the Class 3 Claim. The Debtor shall make equal monthly payments of approximately ~~$88~~$446.~~84~~69 of principal and interest starting the first day of the first month after the Effective Date, and each month thereafter, for a period of five (5) years.

    4.3.2  The Class 3 claimant shall retain its lien on the Jeep Wrangler in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 3 Secured Claim, pursuant to 11 U.S.C. § 506(a).

    4.3.3  The Debtor shall treat any remaining deficiency amount of the Class 3 Claim as a general unsecured claim.

    4.3.4  Upon payment of the secured portion of its claim, any lien asserted by Bellco Credit Union against the Jeep Wrangler shall be deemed released and of no further force and effect. The Debtor shall be entitled to file any necessary documentation with any appropriate authority evidencing the release of such lien.

    4.04  **Class 4. Douglas County Treasurer.** Class 4 shall consist of the Allowed Secured Claim of the Douglas County Treasurer for *ad velorem* property taxes on the Homestead. Douglas County filed a proof of claim for the 2016 taxes due in 2017 for $7,322.14. Such claim is secured against the Debtor's Homestead by statute under Colorado law. C.R.S. §39-4-107. The Debtor asserts that during his bankruptcy case, he paid all outstanding real estate taxes. ~~As such, t~~The Debtor ~~intends to object to this Claim.~~ objected to this claim. On January 9, 2019, the Court entered an order disallowing the claim. Class 4 will therefore be paid nothing under the Plan. **Class 4 is impaired** ~~under the Plan and shall be paid as follows:~~

    ~~4.4.1  Douglas County shall have an Allowed Secured Claim in the amount of $7,322.14. Such claim shall bear interest at the rate of 12.0% per annum and shall be paid in full on the Effective Date of the Plan.~~

    4.05  **Class 5. Douglas County Treasurer.** Class 5 shall consist of the Allowed Secured Claim of the Douglas County Treasurer for *ad velorem* property taxes on the Homestead. Douglas County filed a proof of claim for the 2017 taxes due in 2018 for $7,322.14. Such claim is secured against the Debtor's Homestead by statute under Colorado law. C.R.S. §39-4-107. The Debtor asserts that during his bankruptcy case, he paid all outstanding real estate taxes. ~~As such, t~~The Debtor ~~intends to object to this Claim.~~ objected to this claim. On January 9, 2019, the Court entered an order disallowing the claim. Class 5 will therefore be paid nothing under the Plan. **Class 5 is impaired** ~~under the Plan and shall be paid as follows:~~

Case:17-11650-TBM    Doc#:202    Filed:02/12/19    Entered:02/12/19 10:25:59    Page6 of 18

~~4.5.1    Douglas County shall have an Allowed Secured Claim in the amount of $7,322.14. Such claim shall bear interest at the rate of 12.0% per annum and shall be paid in full on the Effective Date of the Plan.~~

4.06    **Class 6. Maureen Pasquale-Bloom.** Class 6 consists of the priority claim of Maureen Pasquale-Bloom. The Debtor was married to Ms. Pasquale-Bloom. As part of their decree of dissolution, the Debtor was ordered to pay child support to Ms. Pasquale-Bloom. Pre-petition the Debtor was in arrears on such payments. Ms. Pasquale-Bloom filed a proof of claim for the Debtor's arrears in the total amount of $6,193.00. The Debtor's obligation to Ms. Pasquale-Bloom for the benefit of their children constitutes a domestic support obligation as defined by 11 U.S.C. §101(14A), such claim is entitled to priority under 11 U.S.C. § 507(a)(1). The Debtor's youngest child will reach the age of majority in January of 2019. Accordingly, the Debtor's post-petition obligations will cease at that time. The Debtor will cure all such obligations on the Effective Date. 11 U.S.C. § 1129(a)(9)(B). **Class 6 is not impaired.**

4.07.    **Class 7. Unsecured Priority IRS Tax Claim.** Class 7 consists of the unsecured priority tax claims of the IRS. The Internal Revenue Service asserts an unsecured priority tax claims for unpaid income taxes owed by Mr. Bloom as of the Petition Date in the amount of $249,348.38. A portion of the IRS' claim was estimated as Mr. Bloom had not yet filed his 2016 tax return. The Debtor has filed ~~and/or amended~~ his prior year tax returns and amended several years of returns. The Debtor asserts that ~~said amendments reduce the total amount of taxes owed.~~ his tax liability is as follows:

| | Tax Amount (less any payments) | Interest (per Proof of Claim) | Total |
|---|---|---|---|
| 2013 | $9,084 | $1,296.37 | $10,380.37 |
| 2014 | 109,898 | 9,140.88 | 119,038.88 |
| 2015 | 119,032 | 4,263.89 | 123,295.89 |
| 2016 | 134,927 | 0.00 | 134,927 |
| **Total taxes & Interest** | | | **$387,642.14** |

As a result, Mr. Bloom disputes this Claim. **Class 7 is impaired.** Mr. Bloom shall file an Objection to the IRS' Proof of Claim no later than 60 days after the Effective Date.

4.7.1.    ~~To the extent the~~ The IRS ~~has~~ shall have an ~~a~~Allowed ~~p~~Priority ~~c~~Claim in the amount of **$387,642.14**, such claim shall bear interest at the rate of 6.0% per annum and shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan. Should the Court determine that the amount of the IRS claim is different than above, the IRS shall have an Allowed Priority Claim in the amount determined by the Court which shall bear interest at the rate of 6.0% per

annum and shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan.

4.7.2. ~~To the extent any~~The portion of the IRS' Priority Tax Claim which are for penalties and/or damages that are not compensation for actual pecuniary loss ~~and the Court subordinates such amounts~~, shall be subordinated to all other unsecured claims~~, all subordinated amounts shall be~~ and paid as provided for pursuant to Class 11 of the Plan.

4.7.3. In an event of Mr. Bloom's default, pursuant to Article X of this Plan discussed hereafter, the administrative collection powers and rights of IRS shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable law.

4.7.4. IRS shall be entitled to offset any overpayment of taxes or tax refund to which Mr. Bloom may be entitled during the pendency of the case and/or the Plan to any liability owed by Mr. Bloom.

4.08   **Class 8. Unsecured Priority Colorado Department of Revenue Tax Claim.**  The Colorado Department of Revenue ("CDOR") asserts an unsecured priority claim against Mr. Bloom for unpaid income taxes and interest as of the Petition Date under 11 U.S.C. § 507(a)(8) in the amount of $60,023. ~~A portion of CDOR's claim was estimated as Mr. Bloom had not yet filed his 2016 tax return. The Debtor has filed and/or amended his prior year tax returns and asserts that the amendments reduce the total amount of taxes owed. As a result, Mr. Bloom disputes this Claim. Mr. Bloom shall file an Objection to the CDOR's Proof of Claim no later than 60 days after the Effective Date.~~

~~4.8.1.   To the extent the CDOR has~~**The Class 8 claim is impaired.**  The Debtor shall treat the Class 8 Claim as follows:

4.8.1. CDOR shall have an allowed priority claim in the amount of $60,023, ~~such claim~~which shall bear interest at the rate of 7.0% per annum and shall be paid in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date of the Plan.

4.8.2. In an event of Mr. Bloom's default, pursuant to Article X of this Plan discussed hereafter, the administrative collection powers and rights of CDOR shall be reinstated as they existed pre-petition, including, but not limited to, the powers of levy, seizure, and sale under applicable law.

4.8.3. CDOR shall be entitled to offset any overpayment of taxes or tax refund to which Mr. Bloom may be entitled during the pendency of the case and/or the

>Plan to any liability owed by Mr. Bloom.

4.09 **Class 9. Glencove Holdings, LLC.** Class 9 consists of the unsecured creditor claim of Glencove Holdings LLC. The Debtor disputes this claim and estimates ~~is allowed amount~~the Claim at ~~zero; however, if~~$0.00.  **Class 9 is impaired.**  In the event the Class 9 claim is allowed for an amount certain, the holder of the Allowed Class 9 Claim shall ~~receive payment on its Allowed Claim as set forth below:~~

~~4.9.1~~ be treated as follows

a. The Class 9 Claimant shall have an Allowed Claim in the amount determined by the Court.  After payment of all secured and priority claims, Class 9 ~~creditors~~ shall receive pro-rata distributions on an annual basis from the Creditor Fund within thirty (30) days of each anniversary of the Effective Date for a period of five (5) years.

b. To the extent that the Bankruptcy Court determines that the Class 9 claim is not dischargeable under 11 U.S.C. §523(a), confirmation of the Debtor's Plan pursuant to 11 U.S.C. §1141 will not discharge the remaining balance of any Class 9 debt which remains unpaid at the completion of the Plan.  The injunction provision provided below shall terminate upon the completion of all payments under the Plan.

c. *Injunction*.  **So long as the Debtor is in compliance with the Plan, including the curing of any default, except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, the Class 9 Claimant shall be enjoined, from and after the Effective Date, from executing on any judgment that has been determined by the Bankruptcy Court to be not dischargeable under 11 U.S.C. §523(a), including from:**

(I) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor's estate, its successors and assigns, and any of its assets;

(ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor's estate, its successors and assigns, and any of its assets;

(iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor's estate, its successors and assigns, and any of its assets;

**(iv)** **asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's estate, or its successors and assigns, or against any of its assets, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or**

**(v)** **commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.**

4.10   **Class 10. General Unsecured Claims.**  Class 10 shall be comprised of all other creditors, other than Glencove Holdings, LLC, holding Allowed Unsecured Claims against the Debtor, including any allowed claims not subordinated by Order of the Bankruptcy Court, held by any governmental agency which are not related to actual pecuniary loss.  **Class 10 is impaired under the Plan.**

4.10.1   After payment of all secured and priority claims, Class 10 creditors shall receive pro-rata distributions on an annual basis from the Creditor Fund within thirty (30) days of each anniversary of the Effective Date for a period of five (5) years.

4.11   **Class 11.   All Subordinated Unsecured Claims.** Class 11 consists of ~~all~~the unsecured ~~claims that are subordinated to all other unsecured claims, including any claims for penalties not related to actual pecuniary loss and any civil penalties of any governmental authority, together with any pre-petition interest accrued on such claims. Such class includes the subordinated penalty claims of the IRS.~~claim of the IRS for penalties in the amount of $117,964.85.   Pursuant to 11 U.S.C. §726, if the Case was a case under Chapter 7, no creditor holding a priority tax claim for penalties would be entitled to payment until all other claims, including all other general unsecured claims, are paid in full.  Class 11 is impaired under the Plan.  **Class 11 is impaired under the Plan.** Class 11 shall receive nothing on account of their claims.

4.12   **Class 12. Interests of the Debtor in his property.**  Class 12 is unimpaired by this Plan.  On the Effective Date of the Plan Class 12 shall retain its interests in all assets owned prior to the Confirmation Date. If confirmation of this Plan is sought pursuant 11 U.S.C. § 1129(b), all non-exempt property of the Debtor which is property of the Debtor's bankruptcy estate as of the Effective Date of the Plan shall remain property of the estate during the term of the Plan; provided however that the Debtor agrees to sell his assets, including but not limited to his personal residence, as may be needed to assure payments to Classes 1 thru 10 and as may be necessary to comply with the absolute priority rule.

# ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

     5.1.    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection.

     5.2.    Disallowed Claims. On ~~————————~~ December 3, 2018, the Court entered an order establishing ~~————————————~~ **January 2, 2019** as the deadline for filing proof of claims in this bankruptcy case. Pursuant to the order, creditors whose claims were listed in the Debtor's schedules as disputed, contingent or unliquidated and who did not file proofs of claims by the deadline are disallowed with respect to the Debtor's bankruptcy estate.

     5.3.    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed.

     5.4.    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim under $25,000 without further court approval. The Debtor shall seek court approval to compromise any claims in excess of $25,000 in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     6.1    Rejection and Assumption of Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under this section above, or before the date of the order confirming the Plan, upon the effective date of the Plan.

          6.1.1    **A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.**

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

     7.1.    Effect of Confirmation on Assets of Mr. Bloom. Upon confirmation of the Plan, all exempt assets of Mr. Bloom shall be vested in Mr. Bloom as provided in this Plan, free and clear of all Claims and Interests, except as specifically provided in this Plan. If confirmation of this Plan is sought pursuant to 11 U.S.C. § 1129(b), all non-exempt property of the Mr. Bloom's bankruptcy estate as of the Effective Date of the Plan shall remain property of his bankruptcy estate during the term of the Plan. Upon completion of all payments under this Plan, and upon entry of discharge, the non-exempt property of Mr. Bloom's bankruptcy estate shall be vested in Mr. Bloom.

7.2. The Debtor shall not, except as otherwise provided in this Plan, be liable to repay any debts which accrued prior to the Confirmation Date.

7.3. <u>Funding of Plan.</u> This Plan shall be funded by the net income of the Debtor and any non-exempt assets of the Debtor.

7.4. <u>Creditor Fund</u>. As of the Effective Date of the Plan, Mr. Bloom will have opened a separate interest bearing bank account for distributions to Class 9 and 10 creditors (the "Creditor Fund"). After payments to any Administrative Priority Claims, Secured Claims and/or Unsecured Priority Claims, Mr. Bloom will remit all ~~net~~ disposable income (as defined by 11 U.S.C. 1129(a)(15)(B), which incorporates 11 U.S.C. §1325(b)(2)) from all sources, including each paycheck from Bloom Business Jets, ~~LLC~~<u>Inc.</u>, into the Creditor Fund. Mr. Bloom shall maintain a separate bank account which shall be used to pay his ordinary and necessary expenses of his household (the "Operating Account"). The Creditor Fund will be maintained and used for making payments to creditors in Class 9 and 10 until the Plan is completed.

7.5. <u>Payments to Unsecured Creditors</u>. On the first anniversary of the Effective Date, the Debtor shall being making distributions to the Allowed Class 9 and 10 Creditors from the Creditor Fund. Such amounts shall be mailed within thirty (30) days after the anniversary of the Effective Date and continue for five (5) years. Should the funds paid from the Creditor Fund equal the balance due to each Allowed Class 9 and 10, Creditor prior to the end of five years, the Debtor's obligations to Allowed Class 9 and 10 Creditors shall be deemed satisfied.

7.6. <u>Quarterly Fees</u>. Prior to the entry of the final decree, the Debtor shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee. Payments continue until the Chapter 11 case is dismissed, converted or closed. The quarterly fees shall be paid as they become due. The Debtor anticipates filing a motion to administratively close Mr. Bloom's bankruptcy case once required payments under the Plan have been commenced.

7.7. The Debtor's financial records shall be available for review by creditors upon reasonable notice to the Debtor and his counsel during normal business hours subject to execution of an appropriate confidentiality agreement.

7.8. The Debtor may pursue any claims or recovery actions held by the Debtor, including but not limited to recovery under 11 U.S.C. §§ 544, 547, 548 and 549. To the extent the Debtor recovers any money on account of such claims, all funds after payment of litigation expenses, including attorney's fees, shall be deposited into the Fund. The Debtor may abandon any claim he has against any third party if he determines that the claim is burdensome or of inconsequential value and benefit. The Debtor is authorized to employ counsel to represent them in the litigation or any cause of action or claims held by the Debtor.

7.9. All funds held by the Debtor for distribution under the Plan shall be held in accounts which are insured or guaranteed by the United States or by a department, agency or instrumentality

of the United States or backed by the full faith and credit of the United States.

  7.10. After the Effective Date, the Reorganized Debtor exercising their business judgment may sell, operate or abandon any of his assets.

  7.11. <u>Unclaimed Distributions.</u> For a period of one year following the date a payment is due under the Plan, the Debtor shall retain in a reserve account for issuance of any unclaimed distributions for the benefit of the holders of allowed claims and/or administrative expenses which have failed to claim such distributions.  Following the one year period after such distributions are due, the holders of allowed claims or allowed administrative expenses theretofore entitled to such distributions held in such reserve account shall cease to be entitled thereto and thereupon such distributions shall become property of the Debtor.

**ARTICLE VIII**
**<u>GENERAL PROVISIONS</u>**

  8.1 <u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions in the Disclosure Statement.

  8.2 <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

  8.3 <u>Binding Effect.</u> The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

  8.4 <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

  8.5 <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Colorado govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

  8.6 <u>Entire Agreement.</u> This Plan, constitutes the entire agreement among the parties hereto and there are no agreements, representations or warranties which are not set forth herein.  All prior negotiations, agreements and understandings are superseded hereby.

**ARTICLE IX**
**<u>DISCHARGE</u>**

9.1.     <u>Discharge of Mr. Bloom.</u>  Confirmation of the Plan does not discharge Mr. Bloom for any debt provided for in the Plan until the Court grants him a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Mr. Bloom will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523 except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Mr. Bloom anticipates filing a motion to administratively close his bankruptcy case once required payments under the Plan have been commenced.  Upon completion of the required Plan payments, Mr. Bloom will file a motion seeking to reopen the case for purposes on entry of the Final Decree and entry of his discharge.

9.2     <u>Enforcement of Plan.</u>  The Debtor shall be entitled to seek injunctive relief from the Court, if necessary, to enforce any and all provisions of the Plan.

## ARTICLE X
## DEFAULT OF PLAN

10.1     In the event of any default by the Debtor of any payment to any class of claimants arising under the terms of this Plan other than payment to IRS and CDOR, the Debtor shall have thirty (30) days within which to cure any default in payments due under this Plan after the date of issuance of written notice from any claim holder.  The IRS and CDOR have taken the position that it is not required to give the Debtor notice of any default.

10.2     Written notice shall be provided to the Debtor and to their counsel at the addresses set forth below, unless written notice of substitution of legal counsel is served upon the claim holder at least fifteen (15) days prior to the date notice is sent.

10.3     In the event that the Debtor fails to cure any default in the requirements to make payment under the Plan, within thirty (30) days from the date that written notice is sent in compliance with paragraph 10.2, the entire amount of the obligations dealt with under the Plan shall be immediately due from the Debtor.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1     <u>Retention of Jurisdiction</u>. The Debtor reserves the right to reopen the Chapter 11 Case after Confirmation and dismissal for the purposes set forth in this paragraph.  The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

(a)     To hear and determine any and all objections to the allowance of Claims or Interests.

(b)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or

      reimbursed under the Bankruptcy Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

(c)    To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party, and to hear and determine any and all Claims arising therefrom.

(d)    To consider any modifications of the Plan, to remedy any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

(e)    To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan, including, but not limited to, any and all applications, adversary proceedings, claims objections and contested matters that may be pending on the Effective Date or become necessary after the Effective Date.

(f)    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor where the original claim or cause of action is in excess of $25,000.00.

(g)    To issue orders in aid of execution of the Plan as contemplated by 11 U.S.C. § 1142.

(h)    To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

      11.2.   <u>Satisfaction of Claims</u>. The payment of Allowed Claims, including Allowed Administrative Claims, Allowed Secured Claims, Allowed Priority Claims and Allowed General Unsecured Claims shall be in exchange for all claims against the Debtor and shall constitute full settlement, release, discharge, and satisfaction of all such claims against the Debtor. Except as otherwise provided herein, confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

      11.3.   <u>Pre-Existing Causes of Action</u>. Nothing herein contained shall prevent the Debtor from taking any action as may be necessary to the enforcement of any cause of action which may exist on behalf of the Debtor and which may not have been enforced or prosecuted by the Debtor prior to the Effective Date.

11.4. <u>Headings</u>. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.5. <u>Notices</u>. All notices, request, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

(a)  To Mr. Bloom
   at 6290 Ellingwood Point Way
   Castle Rock, Colorado 80108

(b)  With a copy to:

   Kenneth J. Buechler, Esq.
   Buechler & Garber, LLC
   999 18th Street, Suite 1230-S
   Denver, Colorado 80202
   Tel: 720-381-0045
   Fax: 720-381-0382
   Email: ken@BandGlawoffice.com

(c)  To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, if no Proof of Claim is filed, at the address set forth for the claimant in the Debtors' Schedules filed with the Bankruptcy Court.

11.6. <u>Successors and Assigns</u>. The Plan will be binding upon the Debtor, any creditor affected by the Plan and his heirs, successors, assigns and legal representatives.

11.7  **Substantial Consummation.** On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

11.8  **Exemption from Transfer Taxes**. Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

~~Dated: November 19, 2018~~
   <u>11.9  Definitions and Rules of Construction.  The definitions and rules of construction set</u>

forth in 11 U.S.C. §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

a. "Administrative Expense" shall mean any cost or expense of administration of Chapter 11 allowed under 11 U.S.C. § 503(b).

b. "Allowed Claim" shall mean (a) an unsecured claim against the Debtor which is set forth in the Debtor's schedules other than an unsecured claim against the Debtors scheduled by the Debtors as unknown, disputed, contingent or unliquidated; (b) an unsecured claim against the Debtors which has been filed pursuant to 11 U.S.C. § 501, and with respect to which no objection to the allowance thereof has been interposed within the deadlines set forth in this Plan, or as to which any objection has been determined by Final Order; provided however, that interest accrued on or after January 2, 2019, shall not be a part of any Allowed Claim. Allowed Claims may include, but are not limited to, claims that arise from the rejection of executory contracts.

c. "Class" shall mean any class of creditors or interests described in Article II and IV of the Plan.

d. "Code" shall mean the Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

e. "Confirmation" shall mean the entry by the Court of an order confirming the Plan in accordance with Chapter 11 of the Code.

f. "Confirmation Date" shall mean the date on which the Plan is confirmed by the Bankruptcy Court.

g. "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

h. "Contested Claim" shall mean shall mean any Claim which has been scheduled by the Debtor as disputed, contingent, or unliquidated or any Claim as to which an objection to the allowance thereof has been or will be filed within the deadline for filing of such objections set forth in Article V of this Plan. Contested Claims shall be treated under the provisions of Article V of this Plan until allowance or disallowance of such claim has been determined by a Final Order. Contested claims include claims which the Debtor believe should be objected to in whole or in part. Contested claims further include any claims held by creditors against whom the Debtor believe actions may be brought under 11 U.S.C. §§ 544, 547, 548 or 549.

I. "Creditor Fund" shall mean that fund established by the Debtor, pursuant to Section 7.4 of the Plan, for the payment of Class 9 and 10 claims, which shall consist of all of the Debtor's disposable income (as defined by 11 U.S.C. 1129(a)(15)(B), which incorporates 11 U.S.C. §1325(b)(2)) from all sources, including each paycheck from Bloom Business Jets, Inc., after payments to any Administrative Priority Claims, Secured Claims and/or Unsecured Priority Claims.

i. "Disallowed Claim" shall mean any claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

j. "Disputed Claim" shall mean any claim which has been scheduled by the Debtor as

        unknown, disputed, contingent or unliquidated, or any claim as to which an objection has been filed and allowance or disallowance of such claim has not been determined by a Final Order.

k.   "Effective Date" shall mean the first business day following thirty (30) days after the date the order confirming the Plan becomes a Final Order.

l.   "Final Order" shall mean an order or a judgment as to which the time to appeal or seek review or rehearing has expired. In the event that an appeal or petition for rehearing is filed, an order or judgment shall be final unless an Order enters granting a stay pending appeal or petition for rehearing.

m.   "Income" shall mean all of the property of the Estate as defined by 11 U.S.C. §1115.

n.   "Post-petition" shall mean anytime on or subsequent to March 3, 2017.

o.   "Preference Recovery Funds."  All net proceeds from the prosecution of any and all claims pursuant to 11 U.S.C. §§ 544, 547, 548, 549, and 550, in the event the Debtor pursues such claims or actions under the Bankruptcy Code, after payment of legal fees and expenses.

p.   "Pre-petition" shall mean anytime prior to March 3, 2017.

q.   "Pro Rata" shall mean with respect to any claimant, the percentage which the allowed Claim of a creditor bears to the sum of all Allowed Claims in the same class as such Allowed Claim.

r.   "Unimpaired" A class of claims or interests is "unimpaired" in accordance with 11 U.S.C. §1124 if the legal, equitable and/or contractual rights of the holders of such claims or interests are not altered under the Plan.

s.   "Unsecured Claims" shall mean the Allowed Claims against the Debtor which are unsecured and which are other than Allowed Priority Claims and Allowed Administrative Expenses, and shall include any Deficiency Claim(s) arising to the holder of an Allowed Secured Claim, pursuant to the provisions of 11 U.S.C. §506, after a hearing pursuant to the applicable Federal Rules of Bankruptcy Procedure or resulting from any agreement reached between the Claimant and the Debtor in which it was determined that the value of the collateral securing the claim was less than the Allowed Claim.

t.   "Unsecured Creditors" shall mean the holders of allowed Unsecured Claims against the Estate.

Dated: February 11, 2019

                                            */s/ Steven W. Bloom*
By: _____
                                             Steven W. Bloom


Respectfully submitted,
BUECHLER & GARBER, LLC

/s/ Kenneth J. Buechler
_____
Kenneth J. Buechler, #30906
999 18th Street, Suite 1230-S
Denver, Colorado 80202
Tel:720-381-0045
Fax: 720-381-0382
ken@BandGlawoffice.com
ATTORNEYS FOR THE DEBTOR